IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| LEE RYAN,<br>　　　　　　Plaintiff<br><br>vs.<br><br>WELLS FARGO BANK, N.A.,<br>　　　　　　Defendant | §<br>§<br>§<br>§<br>§　　NO. _____<br>§<br>§<br>§<br>§ |

**PLAINTIFF'S ORIGINAL COMPLAINT**

TO THE HONORABLE JUDGE OF SAID COURT:

　　COMES NOW, Plaintiff Lee Ryan, and files this his Original Complaint against Wells Fargo Bank, N.A. and alleges as follows:

**A.  NATURE OF COMPLAINT**

　　This is an action instituted pursuant to alleged violations of the Plaintiff's rights under Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. 2000e, et seq and under Texas Labor Code § 21.051 to remedy acts of employment discrimination perpetrated against him by Defendant Wells Fargo Bank, N.A. ("Wells Fargo" or "Defendant"). Plaintiff contends that Wells Fargo's employees discriminated against him because of his sex and gender identity on more than one occasion when his supervisors excluded him from work meetings and refused to provide him training and when they purposefully called him outside of his preferred pronouns, causing a hostile work environment for him. When he complained about this discrimination, he was threatened by his supervisor. He was written up eleven (11) times within a two (2) week period without any explanation and was then fired.

## B.  PARTIES

1. Plaintiff, Lee Ryan, is an individual who is a citizen of the State of Texas.

2. Defendant, Wells Fargo Bank, N.A., is a national banking association doing business in Texas. Defendant may be served by delivering a copy of the summons and of the complaint to Defendant's registered agent, Corporation Service Company at 211 E. 7th St., Suite 620, Austin, TX 78701.

## C.  JURISDICTION and VENUE

3. This Court has jurisdiction over the subject matter of this civil action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e.

4. Venue is proper in this judicial district under 28 U.S.C. § 1391(b)2 because a substantial part of the events or omissions giving rise to this claim occurred in this district and pursuant to 42 U.S.C. Section 2000e-5(f)(3) as Plaintiff was employed at Wells Fargo in Irving, Texas, and decisions adverse to Plaintiff's employment that are the subject of this civil action were made in this judicial district.

## D.  FACTUAL BACKGROUND

5. Plaintiff Lee Ryan ("Plaintiff" or "Mr. Ryan") is a white transgender male. At the time of the incidents detailed below, he had been employed at Wells Fargo since 2014. Mr. Ryan transferred from the Birmingham, Alabama office to the Irving, Texas office of Wells Fargo in the Credit Card Collection Division in January 2018.

6. At the time of his transfer, Mr. Ryan was in the process of transitioning from female to male.[1] Mr. Ryan was open about what he was doing and asked that he be addressed as Mister/ he/ him.

---

[1] A true and correct copy of the Final Order to Change the Name and Sex/Gender Identifier of an Adult is attached and incorporated into Plaintiff's Original Complaint as Exhibit 1.

7.      Mr. Richard (Rick) Whitson ("Whitson") was Plaintiff's immediate supervisor at the time. Mr. Ryan told Whitson that he would be happy to answer any questions Whitson might have regarding what was occurring with Mr. Ryan in his transitioning process. Whitson responded that he did not need to know anything about "your kind."

8.      From the beginning of his time at the Irving office, Mr. Ryan felt that he had not received adequate or proper training in the area of "Deferments." He expressed his concerns about the lack of training to Whitson multiple times; however, Whitson never offered him any training.

9.      Whitson was openly hostile towards Mr. Ryan. Whitson would ignore him to the point of not telling him when team meetings were being held while Whitson would "round up" the rest of the team for the meeting.

10.     By the end of August 2018, the situation between Whitson and Mr. Ryan became overt. Whitson wrote up Mr. Ryan every day during a two-week period at the end of August 2018. The "write-ups" were sent via Docu-Sign. Mr. Ryan received eleven (11) write-ups in that two-week period. Whitson told Mr. Ryan that he was not following federal law. Whitson even wrote up Mr. Ryan for a "high critical" on a day Mr. Ryan took as one of his flex days and was not even at the office. Whitson never met directly with Mr. Ryan to discuss the write-ups until one month – approximately September 11, 2018 – prior to his termination.

11.     One month prior to Mr. Ryan's termination, Whitson finally met with Mr. Ryan with Whitson's boss, John Reiser, present. Mr. Ryan was placed on an "informal" reprimand, and Whitson told him at the time to "be careful and ask for help." Two weeks later, on or before September 25, 2018, Whitson placed Mr. Ryan on a "formal" reprimand.

12. After this, Mr. Ryan sent an email to Whitson's boss, John Reiser, in which he complained that he was not getting the proper training even though he continually asked for help. John Reiser did not respond.

13. Dominique Hudson ("Hudson") was not Mr. Ryan's direct supervisor, but she held the same supervisory position as Whitson. She worked in the same area as Mr. Ryan's team, so they would periodically interact. Hudson also knew that Mr. Ryan was transitioning from a female to male and that he wished to be addressed as Mister, he, him.

14. Sometime during September 2018, Mr. Ryan was working on a Saturday and needed help, and Hudson was the team leader who was present. As Hudson was walking past him, Mr. Ryan called out, "Hey Dominique, I need some help." Hudson stopped, looked at Mr. Ryan, and responded, "Yes Ma'am. Oh, it's you. What do you want? I'm busy. I will help as soon as I can." However, Hudson never came to help Mr. Ryan. As Hudson had called Mr. Ryan "Ma'am," he reported the incident to Human Resources ("HR"). Shortly after Mr. Ryan reported the incident, Hudson passed by Mr. Ryan's desk and whispered loudly enough to be heard by Mr. Ryan, "If I were you, I would drop that complaint with HR." Mr. Ryan feared for losing his job because of what Hudson said to him, so when HR called him, he acted as if nothing had happened.

15. On October 11, 2018, Mr. Ryan was directed to the "SKIP" room where Whitson and another individual were waiting for him. Whitson was laughing while he said to Mr. Ryan, "Human Resources says you are fired, and we have to let you go." Mr. Whitson did not offer a specific reason for Mr. Ryan's termination.  Mr. Ryan was then escorted out of the building.

E.  PROCEDURAL BACKGROUND

16. After submitting an assessment to the Equal Employment Opportunity Commission ("EEOC"), Plaintiff submitted his Intake Questionnaire via certified mail to the EEOC on June 24,

4

2019 – received by the EEOC on June 28, 2019 – which included a detailed statement regarding the alleged sex discrimination and retaliation against him by Defendant.[2] Plaintiff included both his and Defendant's complete contact information and specifically stated – more than once – that he wished to file a charge of discrimination against Defendant. *See* Exh. 2.

17.     On June 28, 2019, Plaintiff's Charge of Discrimination was filed with the EEOC.[3] On July 26, 2021, Plaintiff received a "Notice of Right to Sue" letter from the EEOC.[4]

### F.  EXHAUSTION OF ADMINISTRATIVE REMEDIES

18.     Plaintiff's Intake Questionnaire constitutes a charge under 29 C.F.R. §§ 1626.3, 1626.6 and 1626.8. A "charge shall mean a statement filed with the Commission by or on behalf of an aggrieved person which alleges that the names prospective defendant has engaged in or is about to engage in actions in violation of the Act." *Federal Express Corp. v. Holowecki*, 552 U.S. 389, 395-96 (2008) (citing 29 C.F.R. § 1626.3). EEOC regulations list five pieces of information that a charge should contain: (1)-(2) the names, addresses, and telephone numbers of the person making the charge and the charged entity; (3) a statement of fact describing the alleged discriminatory act; (4) the number of employees of the charged employer; and (5) a statement indicating whether the charging party has initiated state proceedings. *See* 29 C.F.R. § 1626.8(a). Additionally, a filing is deemed a charge if it can be "reasonably construed as a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and the employee." *Holowecki*, 552 U.S. at 402. *See also EEOC v. Vantage Energy Services, Inc.*, 954

---

[2] A true and correct copy of the Intake Questionnaire filed with the EEOC by Plaintiff is attached and incorporated into Plaintiff's Amended Complaint as Exhibit 2.
[3] A true and correct copy of the Charge of Discrimination filed with the EEOC by Plaintiff is attached and incorporated into Plaintiff's Amended Complaint as Exhibit 3.
[4] A true and correct copy of the Notice of Right to Sue Letter from the EEOC is attached and incorporated into Plaintiff's Complaint as Exhibit 4.

F.3d 749 (5th Cir. 2020) (holding that a Plaintiff's EEOC Intake Questionnaire was sufficient as a "charge.") *See also Casavantes v. California State Univ. Sacramento*, 732 F.2d 1441, 1443 (9th Cir 1984) (holding that "Intake Questionnaire clearly gave the Commission a written statement sufficiently precise to identify the parties and to describe generally the action or practices complained of.") *See also Rayburn v. City of Corpus Christi*, No. C-06-346, 2006 WL 28822851 at *12 (S.D. Tex. October 5, 2006) (stating that the "Supreme Court has noted that §2000e-55 does not define the term 'charge' or specify what kind of filing can constitute a charge under the statute.") The *Rayburn* decision goes on to state that "the EEOC, however, has issued a regulation addressing this topic, which states that a charge is sufficient when the Commission receives from the person making the charge a written statement sufficiently precise to identify the parties and to describe generally the action or practices complained of."[5] Plaintiff's Intake Questionnaire satisfies these requirements: he (1)-(2) includes his and Defendant's names, addresses, and telephone numbers; (3) includes a statement of the alleged sex discrimination and retaliation including the date of the discriminatory acts; (4) states Defendant has more than 500 employees; and (5) states this claim had not been previously filed with the EEOC or another Agency. *See* Exh. 2. The content of the Intake Questionnaire can clearly and objectively be interpreted as a request for the EEOC to take action: the cover letter attached to the Intake Questionnaire specifically states Plaintiff "wishes to go forward and file a Charge-5 against Wells Fargo Corporation," and Plaintiff checked the box on the form that said, "I want to file a charge of discrimination." *See* Exh. 2.The Intake Questionnaire clearly seeks action and intervention from the EEOC to solve the problem. Additionally, after submitting the Intake Questionnaire to the EEOC, the EEOC incorporated it into the Charge of Discrimination and issued a charge number: 450-2019-05451. *See* Exh. 3.

---

[5] 29 C.F.R. §1601.12(b).

Therefore, Plaintiff's Intake Questionnaire constitutes a charge under case law, statutory regulations, and agency regulations.

19. Plaintiff's Charge of Discrimination was timely filed. Upon receipt of Plaintiff's Intake Questionnaire, the EEOC incorporated it as the Charge of Discrimination and specifically stated the Charge was considered received on June 28, 2019.[6] *See* Exh. 3.

20. In the alternative, Plaintiff's Charge of Discrimination was timely filed under the doctrine of equitable tolling. The doctrine of equitable tolling applies to the filing of a charge with the EEOC. A variety of situations give rise to equitable tolling including when the "plaintiff, despite due diligence, cannot obtain vital information about the existence of [his] claim." *Stanley v. Saul*, No. 20-cv-00499-SRB, 2020 U.S. Dist. LEXIS 192748, at *7 (W.D. Mo. 2020) (citing *Jenkins v. Mabus*, 646 F.3d 1023, 1027-28 (8th Cir. 2011). It can also apply in "extraordinary circumstances beyond the [claimant's] control [that] made it impossible to file the claims on time." *Morris v. Lowe's Home Ctrs., Inc.*, No. 1:10-cv-388, 2011 U.S. Dist. LEXIS 63008, at *12 (M.D.N.C. 2011) (also noting multiple cases where courts have applied equitable tolling in situations where the EEOC failed to schedule an interview or prepare a charge before the filing deadline). Equitable tolling applies when a plaintiff "has timely submitted his complaint to an administrative agency and the government has not adjudicated or processed his claim within the limitation period. *Thibodeaux v. Transit Mix Concrete & Materials Co.*, 3 F. Supp. 2d 743, 746 (E.D. Tex. 1998). Likewise, courts have found that equitable tolling applies where "bureaucratic delay" – a situation "where the EEOC fails to send the plaintiff the formal charge for review and signature within the limitations period" – exists. *Rupert v. PPG Indus.*, Civil Action No. 07-705, 2009 U.S. Dist. LEXIS 125741, at *24-5 (W.D. Pa. 2009); *see also Curtis v. Tyco Retail Healthcare Grp., Inc.*,

---

[6] On the Charge of Discrimination, the EEOC also redacted Plaintiff's email address and date of birth from the Intake Questionnaire – an action only the EEOC would take in receiving a charge.

No. 06-4302, 2007 U.S. Dist. LEXIS 38210 (E.D. Pa. 2007); *see, e.g., Bishop v. Hazel & Thomas, PC*, No. 97-2284, 1998 U.S. App. LEXIS 14889, at *5 n.3 (4th Cir. July 1, 1998) (per curiam) ("The doctrine of equitable tolling applies to toll the limitations period when, due to agency error or misinformation, a complainant fails to meet the time requirements for filing an agency complaint . . . ."); *Waiters v. Robert Bosch Corp.*, 683 F.2d 89, 92 (4th Cir. 1982) (finding that Title VII's limitations period should be tolled when the late filing resulted from the EEOC's delay in processing the charge). When Plaintiff submitted his Intake Questionnaire to the EEOC, it was confirmed to be received by the EEOC on June 28, 2019. *See* Exh. 2. However, the EEOC failed to communicate with Plaintiff on the status of his claim. In a letter dated July 16, 2021, Plaintiff's counsel sent a letter to the EEOC Dallas District Office requesting the status of Plaintiff's discrimination complaint.[7] The letter detailed Plaintiff's diligence in requesting information in pursuit of his claim against Defendant. *See* Exh. 5. In response, the EEOC issued a Right to Sue Letter to Plaintiff on July 26, 2021, which included the same EEOC Charge Number from the Charge of Discrimination: 450-2019-05451. *See* Exh. 4. The EEOC failed to act promptly and diligently in processing Plaintiff's claims of discrimination against Defendant.[8] This provides more than sufficient basis to toll the administrative deadline.

21.     Plaintiff's charge was timely filed. If it was not, the EEOC would not have investigated the matter. Regulations governing the EEOC state in **Section § 1601.18Dismissal: Procedure and authority.** (a) Where a charge on its face, or as amplified by the statements of the person claiming to be aggrieved discloses, or where after investigation the Commission determines, that

---

[7] A true and correct copy of the Letter to EEOC is attached and incorporated into Plaintiff's Complaint as Exhibit 5.
[8] The EEOC Dallas Office received Plaintiff's Intake Questionnaire via certified mail on June 28, 2019. As of June 2021, a representative at the EEOC National Office stated the investigation was still listed as "open," but that Plaintiff "should have received the status of [the] investigation and "Notice of Right to Sue" before [then] considering it was sent to the Dallas District Office in June 2019." Exh. 5.

the charge and every portion <u>thereof is not timely filed</u>, or otherwise fails to state a claim under title VII, the ADA, or GINA, <u>the Commission shall dismiss the charge</u>….<u>The Commission hereby delegates authority to District Directors</u>; the Director of the Office of Field Programs, or upon delegation, the Director of Field Management Programs, as appropriate, to dismiss charges, as limited by § 1601.21(d). The Commission hereby delegates authority to Field Directors, Area Directors and Local Directors to dismiss charges pursuant to paragraphs (a), (b) and (c) of this section, as limited by § 1601.21(d)." [underline added][9] If the Plaintiff's Inquiry or Charge Five Form was not timely filed, the District Director of the Dallas Office had the authority to dismiss Plaintiff's charge. However, not only did the Dallas Office not dismiss Plaintiff's charge, it issued a Right to Sue Letter to him.

22.     Plaintiff timely files this complaint within 90 days of receiving the Notice of Right to Sue Letter from the EEOC. *See* Exh. 4.

## G.  COUNT ONE

## **Sex Discrimination in Violation of Title VII of the Civil Rights Act of 1964, 42 USC 2000e. et seq.**

23.     The foregoing paragraphs are realleged and incorporated by reference herein.

Defendant is an employer within the meaning of Title VII, is engaged in an industry affecting commerce and has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year. Plaintiff is an employee within <u>the meaning of Title VII.</u>

25.     Plaintiff is a white transgender male. Plaintiff was employed as an Account Resolution Specialist 3 at Defendant. Plaintiff was the only transgender employee working in that position for

---

[9] Regulations governing the EEOC can be found online at https://www.eeoc.gov/eeoc-regulations last visited on October 21, 2021.

Defendant. Plaintiff was open about his transitioning process. Whitson, Plaintiff's supervisor, knew of Plaintiff's transitioning process but openly stated that he didn't want to know anything about "your kind." Plaintiff requested additional job training from Whitson, but Whitson never provided the training. Whitson also refused to train Plaintiff and intentionally excluded him from team meetings. Whitson's actions created a hostile work environment for Plaintiff.

26    Whitson as Defendant's employee, was empowered by Defendant to take tangible employment actions against Plaintiff including the authority to discipline and terminate Plaintiff which is what he did. Other employees participated in the campaign against the Plaintiff including Dominique Hudson and John Reiser, both employees in supervisory roles, for Defendant. Richard Whitson created a hostile working environment for Plaintiff because of his sex by refusing to provide Plaintiff with training necessary for his job duties and excluding him from team meetings. Hudson created a hostile work environment for Plaintiff because of his sex by refusing to refer to him as 'Mister" while she was aware that Plaintiff was undergoing his transition from female to male, refusing to provide training, and threatening Plaintiff when he filed a complaint with HR. Whitson's and Hudson's conduct was so severe that it ultimately altered the terms and conditions of Plaintiff's employment such that Whitson fired Plaintiff.

27.    Defendant is strictly liable for Hudson's and Whitson's discriminatory conduct because Defendant took a tangible employment action against Plaintiff that significantly changed Plaintiff's employment status when Plaintiff was terminated by Whitson.

### H.  COUNT TWO

### Violations of Texas Labor Code

28    The foregoing paragraphs are realleged and incorporated by reference herein.

29.    Defendant is an employer as defined under Texas Labor Code § 21.002(8)(A).

30. Plaintiff is an employee as defined under Texas Labor Code § 21.002(7).

31. Defendant's decision to refuse to address Plaintiff's complaints about his concerns over his lack of training is a violation of Texas Labor Code § 21.051.

32. Defendant's refusal to address Plaintiff's complaints about his concerns over his lack of training and his hostile work environment, and Defendant's decision to terminate Plaintiff's employment after he filed a complaint with HR is a violation of Texas Labor Code § 21.055.

### I. DAMAGES

33. As a direct and proximate result of Defendant's conduct, Plaintiff suffered the following damages:

   a. Plaintiff was discharged from employment with Defendant. Although Plaintiff has diligently sought other employment, he has been unable to find a position in his chosen profession at comparable salary.

   b. Plaintiff seeks compensation for all lost wages and benefits, including loss of Social Security benefits.

   c. Defendant's conduct was an intentional unlawful employment practice in violation of the Texas Labor Code. Plaintiff is entitled to an award of compensatory damages and punitive damages within the meaning of the Texas Labor Code.

   d. Defendant's conduct was made with malice or reckless indifference in violation of the Texas Labor Code. Plaintiff is entitled to an award of punitive damages within the meaning of the Texas Labor Code.

### J. ATTORNEY'S FEES AND COSTS

34. Plaintiff is entitled to an award of attorney's fees and costs under both Title VII, 42 U.S.C. 200e-5(k) and Section 21.259 of the Texas Labor Code

## K.  PRAYER

35. For these reasons, Plaintiff asks for judgment against Defendant for the following:

   e. Compensation for all lost wages and benefits, including loss of Social Security benefits;

   f. Compensatory and punitive damages under the Texas Labor Code;

   g. Prejudgment interest on lost wages and benefits and Postjudgment interest on all sums, including attorney's fees;

   h. Reasonable attorney's fees and costs of suit; and

   i. All other relief to which the Court deems appropriate.

Dated: October 22, 2021                      Respectfully submitted,


*/s/ Debra Edmondson*
**Debra Edmondson**
Texas State Bar No. 24045824
debra@edmondsonlawfirm.com

**Crystal Ndidi Ibe**
Texas State Bar No. 24101950
crystal@edmondsonlawfirm.com

**The Edmondson Law Firm, P.L.L.C.**
P.O. Box 92801
1100 E. Southlake Blvd., Ste. 400
Southlake, TX 76092
Telephone: (817) 416-5291

**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing instrument has been served on all counsel of record via the Court's Case Management/Electronic Case Filing System (CM/ECF) on this the 21st day of October, 2021.

*/s/ Debra Edmondson*
**Debra Edmondson**
Texas State Bar No. 24045824
debra@edmondsonlawfirm.com
**Crystal Ndidi Ibe**
Texas State Bar No. 24101950
crystal@edmondsonlawfirm.com

**The Edmondson Law Firm, P.L.L.C.**
P.O. Box 92801
1100 E. Southlake Blvd., Ste. 400
Southlake, TX 76092
Telephone: (817) 416-5291

**ATTORNEYS FOR PLAINTIFF**